No. 3.—FRANCIS W. B. PERKINS, plaintiff in error, *vs.* SA-
RAH F. PERKINS, et al., defendants in error.

No. 4.—HUGHES WALTON, guardian, plaintiff in error, *vs.*
HUGHES WALTON, ex'or., defendant in error.

[1.] The sixth section of the Judiciary Act of 1799, does not confer on the
Superior and Inferior Courts, the power to establish copies of lost *wills,*
whether such wills have been admitted to probate, or have not been admit-
ted to probate.

Petitions to establish lost wills, in Burke Superior Court,
before Judge HOLT, November Term, 1856.

Ordered by consent of counsel, that these two cases be
consolidated and argued together.

The petition in the first case of Perkins *vs.* Perkins, alledg-
ed that Brinson L. Perkins, while in life, duly executed his
last will and testament, and the same was destroyed by the
burning of the Court House, in the county of Burke, before
it had been probated or recorded in the Ordinary's office.

In the case of Hughes *vs.* Hughes, the petition alledged,
that the will of Thomas Walton, deceased, *after* having been
duly probated and recorded in the Court of Ordinary of said
county, was destroyed by the burning of the Court House.

The prayer of both petitions was, that the copies of said
wills appended to the petitions, and which were alleged to be
true and substantial copies of the originals, should be estab-
lished in lieu of the originals thus lost and destroyed.

After argument had at chambers, Judge HOLT refused to
grant the prayer of either petitioner, holding that said papers
could only be set up and established as wills in the Court of
Ordinary, and dismissed the petitions. Whereupon counsel
for petitioners excepted and assigned error.

BERRIEN & JONES and MCKENZIE, for plaintiff in error.

JONES & STURGIS, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the Court below right in holding, that it had no power to establish copies of either of the two burnt wills?

And first, was the Court right in holding this as to the will that had *not* been admitted to probate when burnt?

A majority of this Court, including myself, think that the Court was right in so holding. The following are my reasons for this opinion.

If the Court below had the power to establish a copy of either will, the Court must have derived that power from the following words of the sixth section of the Judiciary Act of 1799; "and the said Courts respectively," (the Superior and Inferior Courts,) "shall have power to establish copies of lost papers, deeds or other writings, under such rules and precautions as are or may have been customary and according to law and equity."

But, in these words there is nothing that, in my opinion, confers on those Courts a more extended power over the subject of lost papers, than the power which Courts of equity possess over the same subject. And in this opinion, I think, I am supported by the uniform interpretation put upon those words by the Superior and Inferior Courts themselves.

If I am right in this, then the question is, whether a Court of equity has, or had, the power to establish a copy of this will.

And I think the answer to that question must be, no.

There are cases in which a Court of Equity has interfered to set up a destroyed will, but they are cases in which the destruction of the will was by *spoliation.* There is not a case, as far as I can find out, in which a Court of Equity has interfered to set up a will that had been lost, or that had been destroyed by accident, or indeed, even a will that had been suppressed by fraud. The decisions seem to have been con-

fined exclusively to cases of destruction by *spoliation.—See* 1, *Story Eq.* § 184, *Note* 1, *Id.* § 254, *Note* 6.

But, if there is any thing in these words to confer on the Superior and Inferior Courts the power in question, that thing is in conflict with a part of what is contained in a later act than the act of 1799, viz : the act of 1810, for "more effectually securing the probate of wills," &c. That part is as follows: "and the said Inferior Court when sitting for ordinary purposes, shall have the original jurisdiction of all testate and intestate estates."

For let us say, that the part of the sixth section of the act of 1799, above quoted, gave to the Superior and Inferior Courts, the power to establish the copy of a lost will. What is the establishing of the copy of a lost will by a Court? It is the Court's adjudging and determining two things ; first, that there existed an original will. Secondly, that the established copy is a true copy of that original will. And the first of these two things is neither more, nor less, than a *probate* of the will. If anything further can be needed to complete the probate, it can only be, that the established copy shall be filed and registered in the Court of Ordinary. The judgment establishing the copy, will have cut off that Court from all right of enquiry, as to whether there was a will or not, and if there was, as to what was its contents. In a word, the Court establishing the copy, will have taken the *original* jurisdiction of the "testate" "estate." If therefore, the sixth section of the act of 1799, authorized the Superior and Inferior Courts to do anything of this sort, it authorized them to do what the later act, the act of 1810, forbade them to do ; for the act of 1810, transferred the authority to do all things of the sort, from those Courts to the Court of Ordinary, when sitting for ordinary purposes. In short, if anything in the said sixth section of the act of 1799, gave the power in question to the Superior and Inferior Courts, that thing was repealed by the act of 1810.

For these reasons, I think, that the Court below was right

Perkins vs. Perkins, and Walton, guardian, vs. Walton, ex'r.

in holding, that it had no power to establish a copy of the burnt will that had been burnt before probate.

As to the case in which, the burnt will had been admitted to probate before it was burnt; most if not all of these reasons will, it is manifest, equally apply to it; and some of them with increased force.

A will that has been admitted to probate, becomes a paper of file, belonging to the Court of Ordinary. And a paper on the files of a Court is much of the same rank and dignity as a record of the Court.

The words of the sixth section of the Judiciary Act are, as we have seen, "lost papers, deeds and other writings."—"Other writings," although a general expression, will not, in this connection, include a record; for it is a rule of interpretation, that general words closing an enumeration of particulars, do not extend to particulars that are of higher rank than any of those contained in the enumeration.

And then, if the power conferred by the said sixth section on the Superior and Inferior Courts, was no more extended a power, than that possessed by a Court of Equity, it was not a power that authorized those Courts to establish the records of other Courts; for a Court of Equity never possessed the power to establish the records of another Court. There was never any need that it should possess that power. Every Court of record has ample power to establish its own records.

Therefore, I think, that the Court below was also right in holding, that it had no power to establish a copy of the burnt will that had been admitted to probate before it was burnt.

Lumpkin J. Concurring.

The question submitted to Judge Holt, in this case, was, "whether the Superior, Inferior or Court of Ordinary, was the proper Court to establish a copy will before probate?" and he held that the Court of Ordinary was the only Court in which a lost will could be established; and I am inclin-

·ed to think he was right, notwithstanding a contrary practice has been pursued in many parts of the State.

The Judiciary Act of 1799, in treating of the powers which are common both to the Superior and the Inferior Courts, says: "And the said Courts respectively shall have power and authority to establish copies of lost papers, deeds or other writings, under such rules and precautions as are or may have been customary, and according to law and equity."—*Cobb* 463.

The words, "lost papers," are sufficiently broad to include wills. Still I am inclined to believe, from several considerations, that it was not the intention of the Legislature to include this class of instruments; and in this language, indeed, I suppose, that nothing else was designed, but to confer authority upon these Courts, to do that at common law, which in England could only be done in a Court of Chancery. And I interpret the phraseology at the end of the clause to indicate as much.

Did the Courts of Chancery in England exercise the jurisdiction claimed for these common law Courts, under this clause of the Judiciary Act of 1799? Upon examination it will be found that they did not. In case of spoliation of a will, the Courts of Chancery in England, and in this country too, have assumed jurisdiction; *fraud* being peculiarly cognizable and relievable in Courts of Equity; and in all such cases, where the contents of the will could be ascertained, they would, by a decree, not only establish the suppressed or destroyed will, in all its parts, but direct its complete execution. 1 *Madd. Ch. Prac.* 325–6; 3 *Atkins* 359; 2 *Vernon* 380, 561; 1 *Ves. Sen'r.* 387; 1 *P. Wms.* 731; 2 *Ibid.* 748; 2 *Story's Eq. Jur.* 671. But in ordinary cases of *lost* will, the parties always resorted to the Ecclesiastical Courts.

It is true, that Ecclesiastical Courts have no existence in our confederation. But the Ordinary in this State, is vested with much fuller powers than the Eccleisastical Courts in England. By the act of 1810, which is subsequent to the

Judiciary act of 1799, respecting the establishment of lost papers, it is declared, that the Courts of Ordinary "shall have original jurisdiction of all testate and intestate estates ; and all such other matters and things, as appertain or relate to estates of deceased persons, whether testate or intestate." *Cobb* 283, 284.

By the proceeding in one of the other Courts, something is accomplished, or it is not. If anything is established, as to the *factum* of the execution of the paper, purporting to be a will, it is *pro tanto* an infringement upon the jurisdiction of the Ordinary ; if nothing, then it is an idle ceremony, and a useless expense, and for that reason should not be encouraged.

The conclusion to which I have come, therefore, is that the Ordinary is the only Court, except upon appeal, in which the validity of wills or any other testamentary paper, and the *factum* of their execution, can be established or disputed. Here, the copy of the will alleged to be lost, is offered for probate, its execution established, the executor qualified, who proceeds at once to the performance of the trusts imposed by the instrument; no part of which ceremony could be dispensed with, were a certified copy produced from the records or minutes of the Superior or Inferior Courts. Neither has either of these Courts the power to take any steps to enforce obedience to its judgment by the Ordinary. It is entitled by the Constitution and laws of the land, to examine into this matter for itself, and to form its own independent judgment in the premises. And the fact, that an appeal lies to the Superior Court, while it exposes the absurdity of giving to that Court original jurisdiction, denudes the direction, which we propose to give to this subject, of all possibility of abuse.

Judgment affirmed.

Judge McDonald, concurred in the opinion of the Court, as to the will destroyed after probate, but as to the will destroyed before probate, he delivered the following dissenting opinion.

The will was lost before probate.  The petition, therefore, was not to establish the file or record of another Court.  Neither was it a proposition to prove a will, but to establish the copy of one alleged to have been lost.  It was a proceeding under the Judiciary act of 1799.  That act is very comprehensive.  Authority is given to establish copies of *papers*, *deeds*, or *other writings*.  The power, however, is restricted to the *establishment* of the copy.  No power is given, in a summary way to *enforce*, as well as to establish.  They are to be *established* under such rules and precautions as are or may have been customary according to law and equity.  Parties should have notice of the application, and perhaps, under the broad power conferred, the Court might require the applicant to file a bond of indemnity to the parties against loss, in case the original should be found.  It could not have been the purpose or intent of the Legislature to have allowed any other issue to be tried, than the existence and loss of the paper sought to be established.  The act of the last session of the Legislature authorizing suits to be instituted on lost papers, during the pendency of a proceeding to establish copies, supports this view of the case, page 238. The establishment of the copy of the will, could have no other effect than to place it in the power of the party whose duty or interest it was to offer it for probate, before the tribunal having jurisdiction of testamentary causes, in the same manner that he might have offered the original will, if it had not been lost.  It might be made the subject of contest and examination then, in all respects and in the same manner, as if the original will were offered.  It might be alleged that the testator was not of testamentary capacity ; that it was procured to be made by coercion, fraud or undue influence, &c.

&c.    It is true, the propounder of such established copy could not hope to accomplish a great deal by electing to proceed before the Superior Court to establish a copy, instead of offer-ing the copy for probate primarily, in the Court of Ordinary, alleging the loss of the original.

But this is simply a question of jurisdiction.    In England, Courts of Chancery exercise the jurisdiction, often, because it has power to administer other relief besides the mere es-tablishment of the paper, as to decree payment on such terms as it might impose.    The object of our Judiciary Act was to invest in the Superior and Inferior Courts no such authority, nor does it oust a Court of Equity, of the extensive jurisdic-tion exercised over such subjects by chancellors in England. If the object of the Legislature, by conferring this power on the Superior and Inferior Courts, was to authorize them to decree fully in every case, according to the rights the parties were entitled to enforce on the original paper in every Court, if it had not been lost—as for instance in this case, to order that the copy will be not only established, but that it be ad-mitted to probate, and letters testamentary be issued thereon, such a jurisdiction could not be entertained under the Con-stitution and the act would be void.    But as I believe that the only power given by that act is to establish copies of lost papers, to be used in lieu of the lost original, and in this case, to establish the copy of the lost will, to be offered for pro-bate in the proper Court, in place of the original, I think the Superior Court had jurisdiction and the judgment of the Court below ought to be reversed.